09-3151 Earl Filskov v. Board of Trustees of the Northlake Police Pension Fund Good morning, Your Honors. My name is Jeffrey Goodloe. I'm with Christian Greenberg & Associates. We represent the defendant, the Northlake Police Pension Board. Thank you. Good morning. I'm Joe Heiden. I represent Mr. Filskov. Thank you. Whenever you're ready. Thank you very much, Your Honor. May it please the Court, Counsel. My name is Jeff Goodloe, and I represent the Pension Board. I won't belabor the facts. In fact, I won't even get into them. They're fairly straightforward in this case. The plaintiff was on duty as a police officer in uniform. He was assigned to a squad car with other officers. They were going to get into the squad car. His partner started the squad car. He was the rear seat passenger and inadvertently drove over his foot. The issue in the case is whether the plaintiff's disability resulted from the performance of an act of police duty within the meaning of Section 3-114.1 of the Pension Code. Not only resulted from the performance, but also incurred in the performance of an act of police duty within the meaning of the Pension Code. This issue presents a mixed question of law and fact. Why do you say that? Well, for two reasons. Because we have a set statutory standard. The Supreme Court has ruled that the standard, the definition of the term active duty, as used in Section 3-114.1 of the Pension Code, is the same definition as Section 5-113 of the Pension Code. So we have a set statutory standard, and we have admitted to facts. So we're doing an examination of the legal effect of a given set of facts. And as such, that's a mixed question of law and fact. At least three other courts who have addressed this exact same issue have held that this presents a mixed question of law and fact subject to the clearly erroneous standard of review. It was Merlo v. Orland Hills, which was a First District decision from 2008, Jones v. Bloomington Police Pension Board, a Fourth District decision from 2010, as well as Haroon v. Addison Police Pension Board, Second District. Mr. Goodlaw, excuse me for interrupting. Yes, sir. But when the board considered whether or not the injury here resulted from the performance of an active duty, but rather a risk assumed by all citizens in the ordinary walks of life, were they deciding a question of fact or were they deciding a question of law? I believe that they were deciding a question of fact, Your Honor. And I think it's – I don't know if I can break it down into a question of fact or a question of law, but what they were doing, they were taking that – they were taking those facts and they were applying the law as established by the plain language of the statute, as well as all the case laws come down, and they were applying those facts to the law. So I think that's what makes it a mixed question subject to the clearly erroneous standard, which I think is important because it affords some deference to the pension board's decision in this case. But I can't say that this was just a question of fact. They had to consider the facts, but they had to consider them in terms of the statute as it's written. Counsel, in the ruling from the retiring board, they don't give us – they don't give us any wording so that we would know what standard they're relying on as far as a much more substantial fact or whatever. They don't put that in their ruling, do they? They don't. The statute simply says, resulting from or incurred in the performance of an act of duty. So we have to determine whether Officer Phil Skov, the plaintiff in the case, was performing an act of duty at the time he was injured. It's not that his disabling injury resulted from necessarily – that the act necessarily caused the injury. It's that he was performing an act of duty when he incurred the disabling injury. And it's a hard distinction to make. It really is. And I think that's why a lot of the courts are kind of all over the map on the issue. But I think that when you get into it, first of all, you have to read the plain language of the statute. And the statute says that an act of duty is an act of police duty inherently involving special risk, not ordinarily assumed by a citizen in the ordinary walks of life, imposed upon the policeman by state law, ordinance, regulation, or special assignment, essentially. Or it's an act of heroism. The act of heroism doesn't apply in this. So we have the statute there. But the statute doesn't get us all the way there because then we have all these multiple cases that then interpret the statute. Yes, Your Honor. Would you agree that this statute is one that you'd call fact-specific, the facts of the particular case will determine how it comes out? Do you agree with that? Absolutely agree with that, Your Honor. So on page 9 of your brief, you say, the intended facts and circumstances present at the time the plaintiff suffered his injury do not satisfy the act of duty elements under any reading of Section 5-113. In this case, the plaintiff's partner inadvertently drove the squad car over the plaintiff's foot. So the rest of that is that an ordinary citizen who gets into a car in the same way could be subject to the same injury. I guess that's your argument, right? That's correct, Your Honor. And I think a good case to look at is the Morgan v. Retirement Board case. It's a First District case from 1988, so somewhat of an older case in the line of cases. But in that case, the police officer was at the police department writing police reports, sitting in a chair. The chair collapsed on him. He fell down, and he became disabled. And what the court said in Morgan is that completing police reports, albeit a function peculiar to police officers, does not inherently involve special risks not ordinarily assumed by citizens in the ordinary walks of life. So the fact that the plaintiff in this case is a police officer, that he's on duty, that he's getting into a squad car, getting into a squad car is generally a function peculiar to police officers. Let me ask you this. He was getting in the squad car to do what? Well, to go out on patrol. That's all we know. So if we add one little other fact to this, maybe he was responding to a call. Does that put it in a whole different... Absolutely it does, Your Honor. It completely changes the character of the case. There's no question about it, but we're bound by the facts that are in the record. We can't read facts in that are not in the record. And had he been responding to a call, had there been a fire that they had to go to back up on, were there shots fired, were they responding to a citizen's call for help, such as in the Johnson case, it completely changes the character of the facts of this case and changes the legal outcome. So the fact that he was getting into the squad car to go back to the surveillance or whatever they were doing for suppressing gang activities, that doesn't qualify as the narrow focus that you were just describing for Justice Connors? It does not. The obligation to return to patrol as part of the neighborhood enforcement team, which they had a host of things that they did, that was a function of his job. He was absolutely obligated to do that. But the obligation to perform one's job doesn't necessarily elevate it to the performance of an act of duty. If that was the case, then the statute would read differently, and it doesn't. The statute would have said an act of duty is an act of police duty, get rid of everything up to the comma, imposed upon a policeman by state law, by regulation, by ordinance, by special assignment. But the statute doesn't say that. The statute has more, and the statute says that not only is it an act of duty imposed by law, rule, regulation, but also one that inherently involves special risks, not ordinarily assumed by a citizen in the ordinary walks of life. If you go to the Supreme Court's holding in Johnson, it's not that the police officer was on duty and had to walk his beat. Mr. Goodwin, your comment says that he was really conducting specialized gang and narcotic patrol, and that there is no civilian duty that's comparable to that. And, of course, he had to use a car to do that. I disagree with that. I think that what the plaintiff's argument is trying to do is trying to rely on the hypothetical. Every officer, when every officer goes on the job, they're going to get in there. No, no. In this case, they were, I think the facts say that they were doing a specialized gang suppression activity. That's what this team was entrusted with doing. And your opponent says that's what they were doing. And they needed an automobile to carry out that activity. So there is no comparable civilian activity, according to your opponent. How do you respond to that? I disagree with that. I think what the plaintiff is doing is looking out into the future and what the plaintiff was going to do. And had he actually been injured while performing that function, which would have constituted an act of duty, that would have been different. But what you have to look at are the facts and circumstances attendant at the time of injury. At the time of injury, what was the person doing? In Johnson, the Supreme Court says at the time of injury, it was the police officer responding to the call of a citizen for help. Not that he was out walking his beat and had to walk his beat and do all these things, but that he was actually responding to the call of a citizen for help. In Fedorsky, it was that the Second District said you look at the fact of injury at the time of injury. And at the time that the person was riding in the back of the car as an evidence technician, nothing about that increased their capacity, and the term is capacity that the Supreme Court uses, increased their capacity such that the individual would be performing an act of police duty, inherently involving special risk, not ordinarily assumed by a citizen in the ordinary walks of life. So, yes, he may have been going to do these things, but the facts present at the time of the injury, that's what's key. And if you look at all of these cases, even the cases where the courts have said, yes, we're going to award a line of duty disability here, we're going to either affirm the board or reverse the board and award a line of duty disability pension, they look at the facts present at the time of the injury. In Merlo v. Orland Hills, in Sarkis v. Des Plaines, in Ulm v. Lincolnshire, in Jones v. Bloomington, what was the police officer doing at the time he was injured? And it's not the mundane nature of the injury. That has nothing to do with it. I mean, the fact that this injury could befall anybody makes no difference whatsoever. But what about what he was doing at that time, inherently involved in special risk, not ordinarily assumed by citizens in the ordinary walks of life? And the answer is nothing in this case. On the spectrum or the continuum of when he got in, from the moment that he got in the car at the parking lot to when he went to whatever location where they were conducting their surveillance or whatever gang suppression activities they were about to embark on, is there any point along that continuum that it would switch from being an active duty to not being an active duty? You know, the analysis that you're making is very focused. And I'm just trying to see if I can understand, is there some place on that spectrum that you're saying, here it's an active duty, but here it isn't, and where is that point? It's very difficult to say, Your Honor, and I would have a hard time pinpointing. I don't know if I can draw it down to kind of a defined, a definite line as to, and I don't think it works that way. I don't think all of a sudden you simply, it changes over. Yes, Your Honor.  It absolutely happened in the police parking lot. Okay, so they left the station house. They left the station house. Okay, and I walked down some sidewalks, got to the car, and the car ran over his foot while he was in the process of getting into the car. He had not successfully gotten into the car. No, he had not. In that one moment of time, he was just entering the car in the police parking lot. That's correct. To begin an assignment of cruising the neighborhood. And the fact that he's going on this assignment is just not what is determinative in these types of cases. And I think that brings me to kind of one of my final points on the issue is that I think the plaintiff wants the argument, wants to make the argument that because you're on duty or because you're in uniform or because you're assigned to the neighborhood enforcement team, you have this specialized assignment, that as a result of that, you're performing an act of duty inherently involving special risk not ordinarily assumed by a citizen in the ordinary walks of life. And in every court, even the courts that have awarded the line of duties, have said they preface their holdings by saying simply being on duty and in uniform is not enough. Job assignment alone, job title alone, that is not enough. If that was enough, then the statute would, like I said before, be written differently. I think that you have a Chicago Fire Police Pension Board case right after this one. And if you look at the definition of active duty in section 6-110 of the pension code, there is no inherent risk not ordinarily assumed by a citizen in the ordinary walks of life language there. It's just are you performing an act of duty imposed upon you by law. Let me ask you this. Your opponent says at page 10 of his brief, the determinative question for the court is the capacity in which the police officer was acting at the time of injury. Do you agree with that? I do agree with that. That's the Supreme Court's holding in Johnson. You have to focus on capacity. But, Your Honor, what does that mean? What does that mean? And I think you have to go back closely to the language in Johnson and say in determining what the capacity was, there's no comparable occupation of not just a police officer on the beat, but a police officer responding to the call of a citizen for help, actually responding to that. What about the court statement in Wagner where the court says the act in question need not be unique to police officers? What about that? Because your argument before or earlier is that, you know, anybody gets in and out of a car. That's what people do when they're in a drive somewhere. But your opponent is arguing, yeah, that's true, but this particular officer was assigned to the gang suppression unit and the narcotics surveillance unit or whatever that special unit was. And in order to carry out those specific duties, he had to be in this car going to that location. So that was a unique circumstance. Well, I disagree with that. I think what the Wagner case was getting at is that they were trying to say that just simply because the act can befall anybody doesn't necessarily mean that a person is precluded from obtaining a line of duty disability pension. So we don't look at the mechanism of the injury, the mundane nature of having your foot run over by a vehicle. Instead, you have to look at the facts and circumstances attendant at the time the injury occurred to determine when at that time the person was performing an act of police duty inherently involving special risks not ordinarily assumed by citizens in the ordinary walks of life. And going to the car under these otherwise ordinary circumstances to start your patrol to go out, that doesn't get us there. And if it does get the plaintiff there to obtaining a line of duty disability pension, then I have to think that essentially the language in Section 5-113 requiring the showing of an inherent risk not ordinarily assumed by citizens in the ordinary walks of life is rendered meaningless. I mean, the only argument then will be is the police officer on duty at the time he receives or she receives her injury, or his injury. That's it. And the statute requires more than that. Counsel, what do we know about the history of that language or the reasoning for it being included? Your Honor, I can't answer that question. I don't know anything about the procedural history regarding it. But it is there, and I think it's striking that in other areas of the pension code it's not there. So it has to mean something in terms of an act of duty. In this case, if you have this spectrum of cases from on the one side not on duty, Morgan and Fedorsky, cases like that, to on the other side, cases like Johnson and Alm and Barber v. South Barrington, this case fits along that spectrum somewhere. And I would submit that it fits closer to those individuals who are not entitled to line of duty disability pensions, similar to the police officer in Morgan who was sitting in the chair, similar to the passenger in the vehicle in Fedorsky. So it's definitely not an easy case. There's no question about it. But, again, I would ask Your Honors to reverse the trial court. The standard of review is important. The question is whether the pension board's decision is clearly erroneous, which means there's some deference to the pension board's decision in this case. And I just don't think the plaintiff carried his burden of proving each element in Section 5-113 of the pension code. I would ask Your Honor to affirm the pension board. Thank you. Thank you. I think the foundation for most of these cases in Illinois is the Johnson opinion of the Illinois Supreme Court. And I think the proper focus, unfortunately, starts with the dissent. And Justice Ryan, if I could quote him, and it's only one sentence, Justice Ryan dissented in the Johnson case in the Illinois Supreme Court because he said the majority said it's the nature of the work assigned, not the nature of the work engaged in when injured. That's the majority opinion in Johnson. And I think that's what holds true for all the cases that have followed it. The Jones case, which is our most recent case, indicates that all he is is on routine patrol, and he gets in a car accident. Everybody gets in a car accident. Therefore, their argument, the plaintiff's argument or the appellant's argument would have been, well, they should have denied it, but Jones says no. It was what risk was he facing at the immediate time of the injury? He doesn't need to face the exact risk at the time of the injury. What was his overall capacity at the time that the injury was there? That's what we have to look at. And there's even more here than routine patrol here. What was his assignment? That's really what's key here. He not only had routine patrol. He had an activity, which was limited to three people on the record, of suppressing gang and drug activity. That's not comparable to any citizen operation. He also had they would not put him in separate cars because of the nature of it and the danger of it. He had no choice also, and as Honorable Justice Harris indicated, he was going back into the car. For what reason? He was going back into the car to resume duty. He was in the police lot because he was there on duty. All of this is totally distinguishable from a citizen. He was there because of that. I'm sorry. Mr. Rodney, you know, your opponent points out and makes a good point that, you know, when you get into a car, you get into a car whether you're a police officer or you are a UPS delivery man. If you're getting into a car to drive someplace, you get into the car the same way. So what's unique about this? I'm sure it was an unfortunate thing that his partner drove over his foot, but what's unique about his getting into the car? What's unique is why is he there to be run over, okay? It's not like a citizen. He's there because of a special assignment. He's there because he has to be there. The citizen doesn't have to be there. The second and most important thing is if you look at the Jones case, all the officer in Jones was on routine patrol, and he gets in a car accident the same as every human being gets in a car accident every day. Yet they award him line of duty because of that. In Alm, it even goes further. Alm is the guy who's on bicycle patrol. That's all he does. There is not even an indication in the record of how he injures himself. It's just the continuing wear and tear of the bicycle. Now, everybody rides bicycles. I mean, most people do anyways. As you get older, you don't ride bicycles, but most people do ride bicycles, and that's the same as an ordinary citizen, yet they awarded it because the court looked at why was he riding the bicycle? What was his purpose in riding the bicycle? And that was for protection. I think the fair argument is that if he's in the parking lot and someone bails out Justice Cunningham, bails out of it today, let's assume, and ran over the policeman, I don't think we'd be here saying he wasn't entitled to a line of duty. So what difference does it make? Well, I wouldn't be so sure. Mr. Goodlaw may have a different opinion. Well, I don't think the three justices would, and that's most important. So what difference would it make whether the citizen ran him over or his partner ran him over? Because there you're concentrating, like the board did, on what was the triggering event, and that's not the issue that the cases say. The issue that the cases say is what is his assignment, what is the crux of his assignment at the time of the injury? Well, it sounds like you are talking about what he was gearing up to do. You know, he was actually getting back in the car to go back to go on location, if you will. And as your opponent points out, attention on page 17 of his brief, attention and energies directed toward being prepared to deal with any eventuality, does not constitute the performance of an act of duty. I mean, that's what Jones says. And, you know, it sounds like that's the argument that you're making, that because he was gearing up, this is an act of duty. And, you know, how do you respond to that? Jones doesn't even have to be acting up. As I understand, Jones, he's just on routine patrol when he gets hit in a car accident. I don't – there's no difference here. It's even stronger here because he not only had obligations of routine patrol, he had an obligation of gang activity and drugs activity, and he was in the station for the very essence of his job. He was there filling out arrest reports. He was about to return on routine duty. So you can't take a microcosm of a whole person's obligation, which is what they're trying to do in saying that that specific time he got injured by his partner. I don't think that's the issue. The issue is why was he there? What brought him there? What was his capacity at that time? Mr. Rowdy, excuse me. No problem. Would you agree or disagree that the police board is probably uniquely well-qualified to determine what is an active duty as to what these people are doing? Aren't they best qualified to answer a question of fact as to what is in the line of duty and what isn't in the line of duty? I think you're about 95 percent true, Justice Harris, but the appellate courts have also said we don't have blind adherence to their determination. True, true. So I think it's up to you. But we owe them some sort of deference. That is correct. We are. There's a real question even in this district as to whether it's de novo or it's a mixed question because one of the appellates out of this district. Well, that was my next question, but you're answering it before I ask. I mean, he says it's a mixed question of law and fact, and what do you say? Well, the opinion in Sarkis indicated it was de novo. What do you say with respect to these facts in this case? I don't know, to be honest, because one opinion of the appellate court, Justice Cunningham, says it's de novo. The other opinion of Murrow says it's a mixed question of law and fact. So we have two opinions out of the first district which appear to be not inconsistent but maybe opposed to each other. Can we get back to whether or not they're the proper vehicle to determine a question of fact as to what is encompassed within an act of duty? I think the best analysis is it's a mixed question of law and fact. I think that's the best analysis because both the facts, the facts are uncontradicted here. The law seems to be uncontradicted. It's just a matter of the application of it, and I think that's what Murrow seems to indicate. And don't we give deference, then, to the board's decision if it's a mixed question? We do give deference, but we don't have blind adherence to it. It's just like the trial judge indicated and what the reviewing court has also indicated, because the bottom line is the appellate court has to determine the final result. Thank you. Thank you, Mr. Riley. Brief rebuttal, Mr. Goodlaw? Emphasis on brief? Yes, Your Honors. I will briefly distinguish Jones. In the Jones case, it wasn't just routine patrol. The facts and evidence demonstrated that at the time of the injury, the officer was actually responding to the call of an area where citizens were complaining about speeding. Not only that, at the time of the injury, the officer testified, and there were facts in the record, that it's not routine. Driving a police car as a police officer is not like you and me driving a police car, or driving a car, presumably. He had to wear a cumbersome belt. He had to pay attention to the computer to his right. He had to listen to radio traffic. So there were facts to distinguish that, to elevate the capacity of that particular officer to show that driving a police car responding to this scene was something that involved inherent risk, not ordinarily assumed by a citizen in the ordinary walks of life. In this case, we simply don't have the facts present at the time of injury to elevate the plaintiff's capacity in this case, and to do so would eviscerate the distinction between non-duty and line-of-duty disability pensions in Article III of the Pension Code. Thank you very much, Your Honors. We can all agree that that statute is less than clear. Thank you. Thank you. Thank you both. Thank you. This matter will be taken under advisement.